Dendalee McBEE, Petitioner-Appellant,

v.

William F. GRANT,
Respondent-Appellee.

No. 83–1754.

United States Court of Appeals,
Sixth Circuit.

Submitted April 10, 1985.
Decided June 10, 1985.

Dendalee H. McBee, pro se.

Frank J. Kelley, Atty. Gen. of Michigan, Thomas C. Nelson, Asst. Atty. Gen., Corrections Div./Criminal Appeal Sec., Lansing, Mich., for respondent-appellee.

Before CONTIE and MILBURN, Circuit Judges, and BROWN, Senior Circuit Judge.

CONTIE, Circuit Judge.

Dendalee McBee appeals the district court's dismissal of his 28 U.S.C. § 2254 habeas corpus petition. McBee appeared pro se below and continues pro se before this court. We affirm.

### I.

The facts relevant to this appeal are undisputed. On January 22, 1971, McBee was convicted of murder in the first degree in a Michigan state court. The state's evidence was chiefly as follows. On August 20, 1970, Larry Sweat was shot and killed while riding in the front seat of an automobile driven by Edward Vanisacker. McBee and Robert Hobbs were in the rear seat. Vanisacker testified that he heard shots while driving, turned his head and saw McBee holding a gun. He testified that McBee then said, "beautiful ... he died nice." Hobbs testified that McBee shot

Sweat twice and then said "beautiful ... he didn't squirm." Hobbs also testified that McBee later admitted he had been paid to kill Sweat. Two other witnesses testified that McBee admitted shooting Sweat.

A significant part of McBee's defense was that he was unable to form the specific intent to commit first degree murder due to involuntary intoxication.[1] He testified that earlier that evening Sweat had given him a beer which had a peculiar taste and that after drinking the beer he began hallucinating. He denied having any memory of the incident. A psychiatrist was called by the defense. He testified that he believed McBee had been suffering from "toxic hallucinosis" at the time of the killing and that McBee had been temporarily unable to understand what was occurring. Lay witnesses offered some corroboration of this defense theory, testifying that they observed McBee acting strangely during the relevant time period. The prosecution also presented psychiatric testimony. Its expert testified that he did not believe McBee had been on hallucinatory drugs at the time of the shooting and that McBee had known what he was doing.

Although no insanity instruction was requested, the trial court did instruct the jury on the defense's theory of a lack of specific intent. In addition, the court gave the usual instructions on the burden of proof and the presumption of innocence. At issue in this appeal are the court's instructions on malice and intent. Although McBee did not object to these instructions at trial, he now argues that they shifted a burden of proof to him in violation of the due process clause of the fourteenth amendment. *See Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

Shortly after giving the malice and intent instructions, the trial judge made the following comment:

> At this time I am going to make a comment which is not a part of the instruc-

---

**1.** McBee's other defense was that, given his position in the car and the angle of the entry wounds, he could not have fired the fatal shot.

tions and is not binding on you. The comment is this: It is quite easy for any person who is charged with a serious crime to claim that he blacked out and remembers nothing. Now back to the instructions.

McBee's second claim is that this comment by the trial judge on the defense's theory denied him a fair trial.

The procedural history of this case is as follows. McBee first filed a new trial motion, not raising either of the grounds now advanced, on February 22, 1974. On an appeal of right, McBee did raise the issue of improper comment by the trial judge. The Michigan Court of Appeals affirmed the conviction in November 1975. McBee did not seek review of this decision in the Michigan Supreme Court. On July 21, 1977, McBee filed a delayed motion for a new trial. This motion raised both issues presented in this habeas petition. The trial court denied the motion and in January 1978 the Michigan Court of Appeals denied leave to appeal. The Michigan Supreme Court, however, remanded the case to the court of appeals. *See People v. McBee*, 407 Mich. 939, 291 N.W.2d 927 (1979). Apparently, the *Sandstrom* issue now raised was then before that court, even though the Michigan Supreme Court referred only to the issues raised in the 1975 appeal when remanding to the court of appeals. *See* 407 Mich. at 939, 291 N.W.2d 927. Following this remand, the Michigan Court of Appeals again affirmed the conviction. Leave to appeal this last court of appeals decision was denied by the Michigan Supreme Court on October 8, 1982. McBee then filed the instant habeas corpus petition.

The district court held that the cause and prejudice test of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), barred consideration of McBee's *Sandstrom* claim and that no error of constitutional magnitude occurred in the trial court's comments to the jury on McBee's theory of defense.

## II.

The district court found that both of McBee's claims have been exhausted and the respondent does not contest this holding. The claims clearly have been exhausted since they were "fairly presented to the state courts." *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). *See also Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (per curiam); *Duckworth v. Serrano*, 454 U.S. 1, 100 S.Ct. 18, 70 L.Ed.2d 1 (1981) (per curiam).

■ Apart from exhaustion, there remains the question of whether McBee's failure to object to the jury instructions precludes him from raising the *Sandstrom* claim. The rule is, of course, that the failure to abide by a state's contemporaneous objection rule will bar habeas review of the issue absent a showing of cause for the failure to object and actual prejudice flowing from the asserted error. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Fornash v. Marshall*, 686 F.2d 1179 (6th Cir.1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1439, 75 L.Ed.2d 796 (1983) (applying the cause and prejudice standard in the context of a *Sandstrom* claim). The cause and prejudice standard is not applied, however, when the state court overlooks the procedural default and instead disposes of the issue on the merits, 99 S.Ct. 2213, 2219–2223, 60 L.Ed.2d 777. *See County Court of Ulster v. Allen*, 442 U.S. 140, 147–54 (1979); *Hockenbury v. Sowders*, 620 F.2d 111, 115 (6th Cir.), *reh'g denied*, 633 F.2d 443 (1980), *cert. denied*, 450 U.S. 933, 101 S.Ct. 1395, 67 L.Ed.2d 367 (1981). When a state court disposes of a claim by relying on the procedural default but also discusses the merits, *Sykes* applies if the procedural default was at least a "substantial basis" for the decision. *See Hockenbury*, 620 F.2d at 115.

In this case, the Michigan Court of Appeals disposed of McBee's *Sandstrom* argument with the following language:

> The record reflects that the trial judge also gave the jury an unobjected to instruction similar to that condemned by our Supreme Court in *People v. Wright* .... However, we do not find that the

instruction has amounted to reversible error in this case because defendant did not object to the instruction and because the judge appended to it a caution to the jury that the law does not presume a person intends the natural and ordinary consequences of a voluntary action if "the facts and circumstances of the killing or the evidence create a reasonable doubt whether the killing was done without deliberation, premeditation, malice or intent to kill."

Clearly, the state court both relied on procedural grounds and briefly reviewed the merits of McBee's claim. This disposition, in terms of the relative emphasis attached to the procedural default, is strikingly similar to that appearing in *Hockenbury, see* 620 F.2d at 115, where we held that the procedural default was a substantial basis of the disposition of the claim.

In this case the decision of the Kentucky Supreme Court makes it clear that its denial of petitioner's claim was based, in substantial part, on petitioner's failure to comply with the state's contemporaneous objection requirement.... [T]he Court's review of the merits of petitioner's claim was cursory at best.... The Court did not make a complete analysis on the merits of petitioner's claim, nor did it make a concrete ruling on the effect of the factual distinction that it had noted. Instead it relied on the procedural ground in denying petitioner's claim. Finally, it is apparent that the nature of Kentucky's contemporaneous objection rule required the Court to make a cursory review of the merits of petitioner's claim. As stated, the Kentucky rule precludes appellate review of matters which are not objected to, unless manifest injustice resulted. At least some review of the merits of the defendant's claim must be made in order to determine whether to apply the procedural rule or review the merits on the basis of manifest injustice. Consequently, we conclude that the Kentucky Supreme Court's denial of petitioner's claim was substantially based on the state procedural ground, despite the cursory review of the merits of petitioner's claim.

620 F.2d at 115–16 (footnote omitted). Michigan also has a manifest injustice element in its contemporaneous objection rule[2] and, as in *Hockenbury,* this explains the brief review of the merits of McBee's claim. We reach the same conclusion that the court reached in *Hockenbury* and hold that the state court's decision was based at least in substantial part on its contemporaneous objection rule. *See Hollin v. Sowders,* 710 F.2d 264, 267–68 (6th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1300, 79 L.Ed.2d 699 (1984); *Jones v. Jago,* 701 F.2d 45, 47 n. 2 (6th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 274, 78 L.Ed.2d 255 (1983).

Although a state court's reliance on its contemporaneous objection rule normally triggers the application of the cause and prejudice standard, the application of that standard is somewhat complicated by *Engle v. Koehler,* 707 F.2d 241 (6th Cir.1983), *aff'd by an equally divided Court,* —— U.S. ——, 104 S.Ct. 1673, 80 L.Ed.2d 1 (1984). *Engle,* like this case, dealt with an alleged *Sandstrom* error arising out of Michigan. The respondent argued that the cause and actual prejudice standard should apply because of a failure to object to the instruction. This court held that the cause and prejudice standard was inapplicable "because the Michigan courts do not enforce a contemporaneous objection rule against failures to object to *Sandstrom* instructions." *Id.* at 244. In reaching this conclusion, we relied on *People v. Wright,* 408 Mich. 1, 289 N.W.2d 1 (1980). In *Wright* the Michigan Supreme Court held that a jury instruction was unconstitutional under *Sandstrom.* In doing so, it discussed the defendants' failure to object:

Defendants raised no objection to the subject jury instructions, although they were diligent in attacking other aspects of the charge. As a general rule, this Court will not review unobjected-to jury instructions in the absence of manifest

---

**2.** *See People v. Wright,* 408 Mich. 1, 30 n. 13, 289    N.W.2d 1 (1980).

injustice. The obvious merit to this rule is that it draws the trial judge's attention to a possibly offensive instruction and allows necessary corrective measures to be taken....

However, failure to object should not be made a basis for denying relief in these cases. General instructions of this kind may be part of a judge's customary litany and not the subject of conference discussion with counsel before being given. Unless counsel has become conversant with the judge's customary instructions, the instruction may be given before he has an opportunity to object. Once given, the damage may be irremediable because the judge must repeat the instruction to identify it and then caution the jury to disregard it. Many defense lawyers may regard "cure" by corrected instruction as no better and perhaps worse than the injury.

Depending on defense objection and assessing case-by-case the harm resulting from the instruction may inadequately deter continued use of the instructions.

*Id.* at 30 n. 13, 289 N.W.2d 1 (citations omitted).

■ What *Engle* held, in reliance on *Wright,* to be the general practice of Michigan courts obviously conflicts with the practice of the Michigan courts in this particular case. Nevertheless, Michigan courts are the final authority on Michigan substantive and procedural law. In this case, the Michigan Court of Appeals held that the merits of McBee's *Sandstrom* claim would not be heard because of a failure to object and the Michigan Supreme Court denied McBee leave to appeal this ruling. Were we to hold that despite this

ruling McBee may now raise his *Sandstrom* claim without demonstrating cause and prejudice, we would, in effect, be holding that the Michigan courts incorrectly decided a matter of Michigan law. In *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), the Supreme Court indicated the proper approach:

Respondents bolster their plain-error contention by observing that Ohio will overlook a procedural default if the trial defect constituted plain error. Ohio, however, has declined to exercise this discretion to review the type of claim pressed here.... If Ohio had exercised its discretion to consider respondents' claim, then their initial default would no longer block federal review.... Our opinions, however, *make clear that the States have the primary responsibility to interpret and apply their plain-error rules.* Certainly we should not rely upon a state plain-error rule when the State has refused to apply that rule to the very sort of claim at issue.

*See id.* at 135 n. 44, 102 S.Ct. at 1575 n. 44 (emphasis added). This court anticipated this ruling in *Hockenbury.* We there held that *Sykes* "compels the federal court to defer to the state court's application of its own contemporaneous objection requirement." *See Hockenbury,* 620 F.2d at 114. Similarly, in *Brewer v. Overberg,* 624 F.2d 51, 53 (6th Cir.1980), *cert. denied,* 449 U.S. 1085, 101 S.Ct. 873, 66 L.Ed.2d 810 (1981), we held that even where the state court's ruling "strains the language" of its contemporaneous objection rule, "we are bound by the State court's interpretation of its procedural rule." [3] We reiterated this point at some length in denying rehearing in *Hockenbury:* "Implicit in the Supreme

---

**3.** We note in passing that our citation of *Brewer* is not meant to resuscitate its other holding, that "noncompliance with a state procedural rule does not bar habeas corpus review of 'plain error'." *Id.* Whether a habeas court may review a claim under a state's plain error rule when the state courts have refused to do so was once a hotly contested issue in this circuit. *See, e.g., Walker v. Engle,* 703 F.2d 959, 966 n. 10 (6th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 367, 396, 78 L.Ed.2d 327 (1983); *Hockenbury,*

633 F.2d at 444–45 (order denying rehearing), 445–49 (Keith, Circuit Judge, and Jones, Circuit Judge, dissenting from denial of rehearing en banc). Whatever the merits of the opposing arguments, further discussion of this issue is of academic interest only in light of recent Supreme Court cases. *See Isaac,* 456 U.S. at 135 n. 44, 102 S.Ct. at 1575 n. 44; *United States v. Frady,* 456 U.S. 152, 165–66, 102 S.Ct. 1584 (1982). *See also Fornash,* 686 F.2d at 1186.

Court's opinion in *Wainwright* is the conclusion that a state may decide when its contemporaneous objection requirement applies." *See* 633 F.2d at 444. Other courts are in agreement with these holdings. *See, e.g., Euell v. Wyrick,* 675 F.2d 1007, 1008 (8th Cir.1982) ("The federal court's task is not to apply state procedural rules as though it stood in the state court's shoes, but rather to determine whether the state courts relied on adequate state grounds to dismiss the claim....").

The *Sykes* rule is based on comity. *See County Court of Ulster,* 442 U.S. at 154, 99 S.Ct. at 2223. When state courts bar a claim due to a procedural default, the concerns of comity are sufficiently invoked to require the application of the *Sykes* cause and prejudice test even though prior decisions of the state's courts indicated that they would not enforce a contemporaneous objection rule. Only in rare cases will a federal habeas corpus court not defer to a state's application of its own contemporaneous objection rule.[4] The Michigan Supreme Court had an opportunity to correct any error made by the Michigan Court of Appeals, but it declined to do so. In addition, a later Michigan Supreme Court case suggests that *Wright* may not stand for the broad proposition that procedural default will never be invoked in a *Sandstrom* case. In *People v. Woods,* 416 Mich. 581, 331 N.W.2d 707 (1982), *cert. denied,* 462 U.S. 1134, 103 S.Ct. 3116, 77 L.Ed.2d 1370 (1983), the court determined the retroactivity of *Sandstrom.* In holding that *Sandstrom* will have only limited retroactivity, the court stated:

> [W]e decide that retroactive application to those defendants whose cases were pending on direct appeal when *Sandstrom* was decided is required *if the issue was properly raised and preserved.*

*Id.* 416 Mich. at 621, 331 N.W.2d 707 (emphasis added). This language suggests that the Michigan Supreme Court does generally require an objection to preserve a *Sandstrom* error. Accordingly, we hold that the cause and prejudice standard applies to this claim notwithstanding the contrary indications in *People v. Wright.*

■ McBee has not asserted any cause for the failure to object. Since McBee appeared pro se, the district court proposed two arguments on McBee's behalf. First, it could be argued that cause exists because the *Sandstrom* claim was novel and unforeseeable at the time of McBee's trial. This claim fails under *Engle v. Isaac* and *Reed v. Ross,* — U.S. —, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). In *Isaac* the habeas petitioners asserted "novelty" as a cause for the failure to object. They had been tried in 1975, well before the 1979 *Sandstrom* decision. The Court, although not deciding whether the novelty of a claim could ever establish cause, held that as a factual matter the defendants' "claims were far from unknown at the time of their trials." *Id.* 456 U.S. at 131, 102 S.Ct. at 1573. Although Sandstrom was not decided until 1979, *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 1068, 25 L.Ed.2d 368 (1970), which "laid the basis for their constitutional claim," was decided well before their trials. *See* 456 U.S. at 131, 102 S.Ct. at 1573, *Winship* held that the state must prove "beyond a reasonable doubt ... every fact necessary to constitute the crime." *Winship,* 397 U.S. at 364, 90 S.Ct. at 1072–1073. In light of *Winship* and lower court cases both before and shortly after *Winship, see Isaac,* 456 U.S. at 131 n. 39, 132 n. 40, 102 S.Ct. at 1574 n. 39, 1574 n. 40, the habeas petitioners had "the tools to construct their constitutional claim." *Id.* at 133, 102 S.Ct. at 1574.

---

**4.** In *Walker v. Engle,* 703 F.2d 959 (6th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 367, 396, 78 L.Ed.2d 327 (1983), the defendant clearly had objected to the asserted error at trial, but the state court erroneously read the record and concluded that no objection had been made. *See id.* at 965. We held that in such a situation a

habeas petitioner need not demonstrate cause for the failure to object and actual prejudice. *Id.* at 966. This exception to the *Sykes* rule, however, is limited to those rare situations in which the state courts have made a gross factual error which has "no foundation in the record." *Id.* at 967.

The Court returned to this subject in *Ross.* The habeas petitioner in *Ross* was tried in 1969, before *Winship. See id.* 104 S.Ct. at 2903. The Court first answered the legal question left open in *Isaac* and held that the novelty of a claim, if demonstrated, is legally sufficient to constitute cause for the failure to object. *See id.* at 2909. It then held that the *Sandstrom* claim was sufficiently novel in 1969 to establish cause, since *Winship* and similar cases had not yet been decided. *Id.* at 2911–12.

We conclude that *Isaac* and *Ross* taken together establish a bright line rule for judging novelty in relation to cause. If the failure to object to a *Sandstrom* instruction occurred before *Winship*, cause will be found; if it occurred after *Winship*, the defendant had the "tools" to make his claim and cause does not exist. Accordingly, since McBee was tried in January of 1971, after *Winship*, his claim was not so novel as to constitute cause for his failure to object. *See Wilson v. Procunier*, 747 F.2d 251, 252–53 (4th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 1206, 84 L.Ed.2d 348 (1985).[5]

■ The district court also raised the possibility that the failure to object might be attributed to ineffective assistance of counsel. This claim, not raised by McBee, was disposed of in *Isaac.*

We do not suggest that every astute counsel would have relied upon *Winship* to assert the unconstitutionality of a rule saddling criminal defendants with the burden of proving an affirmative defense. Every trial presents a myriad of possible claims. Counsel might have overlooked or chosen to omit respondents' due process argument while pursuing other avenues of defense. We

have long recognized, however, that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim. Where the basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default.

*Isaac,* 456 U.S. at 133–34, 102 S.Ct. at 1574–1575. *Cf. Jones,* 701 F.2d at 47–48 (failure to object to *Sandstrom* instruction does not constitute ineffective assistance of counsel); *Honeycutt v. Mahoney,* 698 F.2d 213, 216–17 (4th Cir.1983) (same).

When *Sykes* applies, a habeas petitioner must demonstrate both cause for the failure to object and prejudice flowing from the asserted error; the failure to establish either element is sufficient to bar the claim. *See Isaac,* 456 U.S. at 134 n. 43, 102 S.Ct. at 1575 n. 43; *Hockenbury v. Sowders,* 718 F.2d 155, 160 (6th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 2354, 80 L.Ed.2d 826 (1984). Since McBee has failed to show cause for his failure to object to the jury instruction, we need not address the question of prejudice.

## III.

■ McBee argues that he was denied a fair trial by the trial judge's comment that it is quite easy for someone to fabricate amnesia. We agree with the district court that the trial judge's comment was not an error of constitutional magnitude.

There is no general prohibition against a trial court commenting upon the evidence. *See Quercia v. United States,* 289 U.S. 466, 469, 53 S.Ct. 698, 77 L.Ed. 1321 (1933).

5. In rejecting the novelty argument, the Court in *Isaac* also noted several lower court cases decided after *Winship* but before the trials in *Isaac. See* 456 U.S. at 132 n. 40, 102 S.Ct. at 1574 n. 40. Although some of these cases were decided after McBee's trial, we do not believe that this changes the result. The line for establishing the novelty of a *Sandstrom* claim must ultimately be drawn somewhere and we believe the best

place to draw it is at *Winship,* a Supreme Court case, rather than at a date after *Winship* when some lower court decided a similar case. This result is consistent with *Ross,* which held that a *Sandstrom* claim was sufficiently novel prior to *Winship* even though several lower court cases had anticipated the holdings in *Winship* and *Sandstrom. See Ross,* 104 S.Ct. at 2915 (Rehnquist, J., dissenting).

"Unless they amount to constitutional violations, prejudicial comments and conduct by a judge in a criminal trial are not proper subjects for collateral attack on a conviction." *Brinlee v. Crisp,* 608 F.2d 839, 853 (10th Cir.1979), *cert. denied,* 444 U.S. 1047, 100 S.Ct. 737, 62 L.Ed.2d 733 (1980). In collateral proceedings, the test is "whether the errors alleged ... could have rendered [the] trial fundamentally unfair." *Buckelew v. United States,* 575 F.2d 515, 518 (5th Cir.1978). To violate a defendant's right to a fair trial, "a trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree." *Daye v. Attorney General of New York,* 712 F.2d 1566, 1572 (2d Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). We hold that the comments by the trial judge in this case did not render the proceedings fundamentally unfair and did not deprive McBee of any constitutional right. First, McBee relies upon a single comment by the trial judge and does not allege a pattern of pervasive interference in the proceedings. Second, the judge told the jury in so many words that the comment was not binding on them. Third, the judge stated that the comment was not a part of the instructions both before and after the comment. Thus, the comment was safely bracketed away from the rest of the instructions. Under these circumstances, McBee's right to a fair trial was not violated.

### IV.

The district court correctly held that McBee's *Sandstrom* claim is barred because he did not demonstrate cause for his failure to object and that McBee's fair trial claim is without merit. Accordingly, the judgment of the district court is AFFIRMED.