798 F.2d 1416
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Edward Lynn TURNER, Sr., Petitioner-Appellant,
v.
Arnold R. JAGO, Respondent-Appellee.
 No. 85-3762.
 United States Court of Appeals, Sixth Circuit.
 July 15, 1986.
 
 Before MILBURN and RYAN, Circuit Judges, and BERTELSMAN, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Edward Turner appeals the district court's denial of his 28 U.S.C. Sec. 2254 habeas Corpus petition. Turner alleges that:
 
 
 2
 (1) He was denied due process of law when the trial court erroneously instructed the jury on self-defense and refused to instruct the jury on accident;
 
 
 3
 (2) He was denied effective assistance of counsel as a result of the self-defense instruction; and
 
 
 4
 (3) He was denied due process and the effective assistance-,of counsel by the admission of identification testimony procured through an illegal identification procedure.
 
 
 5
 Our review of Turner's claim as to the jury instructions is barred by his failure to object, unless he can show cause for his failure to object, and the prejudice which resulted from the instruction. We conclude that Turner's inability to show cause for his failure to object to any of the instructions he now challenges bars our review of his claim as to the 3ury instructions. For the reasons discussed below, we find Turner's remaining arguments to be without merit and we affirm the judgment of the district court.
 
 I.
 
 6
 * Under 28 U.S.C. 5 2254(d)(8), factual determinations made by a state court after a hearing on the merits are presumed correct unless they are not fairly supported by the record. The burden is on the habeas petitioner "to establish by convincing evidence that the factual determination by the State court was erroneous." ,Since we conclude that Turner failed to carry that burden, we adopt the findings of fact of the Ohio Court of Appeals for the Fifth Appellate District, which, in the interest of brevity, we summarize:
 
 
 7
 At about 8:30 p.m. on the evening of January 23, 1981, the decedent, Curtis Mott, went to the Glass Bar in Lancaster, Ohio. He was accompanied by his wife, Debbie Mott, and three co-workers, Dale Thompson, Mike Jacobson and William swisher. Shortly after midnight, Mott, his wife, and Thompson decided to leave the bar. Enroute to the door, Mott had words with one topher Alten and Herbert "Terry" England, both of whom witnessed the altercation, identified Turner as the man who cut Mott.
 
 
 8
 B Petition was indicted on January 26, 1981, by a Fairfield
 
 
 9
 County, Ohio grand jury on a charge of aggravated murder, in
 
 
 10
 violation of Ohio Rev. Code Ann. Sec. 2903.01 (Page 1982).
 
 
 11
 A hearing was held on petitioner's motion to suppress the
 
 
 12
 identification testimony of witnesses Williams Swisher,
 
 
 13
 Herbert "Terry" England and Christopher Alten. The Motion
 
 
 14
 was denied, and petitioner pled not gUilty. After a trial
 
 
 15
 by jury, petitioner was found guilty of the lesser included
 
 
 16
 offense of murder, in violation of Ohio Rev. Code Ann. Sec.
 
 
 17
 2903.02 (Page 1982), and was sentenced to confinement in a
 
 
 18
 penal institution for a term of fifteen years to life imprisonment.
 
 
 19
 Petitioner appealed to the ohio Court of Appeals for the Fifth Appellate District. The appellate court found Turner's assignments of error to be without merit and affirmed his conviction. The Ohio Supreme court denied leave to appeal.
 
 
 20
 The trial court denied Turner's petition for Post-conviction relief. The state intermediate Appellate Court affirmed that determination, and the Ohio Supreme Court denied leave to appeal on October 10, 1984.
 
 
 21
 On February 5, 1985, Turner filed a Petition for writ 0 c habeas corpus in the district court. 9 aSserted three groUnds for relief:
 
 
 22
 1. He was denied due process of law when the trial court erroneously instructed the jury on the issue of self-defense.
 
 
 23
 2. He was denied effective assistance of counsel by. virtue of the trial court's erroneous charge to the jury.
 
 
 24
 3. He was denied his rights under the sixth and fourteenth amendments by virtue of an illegal identification lineup.
 
 
 25
 The district court denied petitioner's claim for habeas relief and he appeals.
 
 II.
 
 26
 * Turner claims that his theory of defense at trial was that Mott's death was an accident. He claims he was denied due process when the trial court refused his request for an instruction on accident and, instead, instructed the jury on selfdefense, over his objection, because "[i]n instructing the jury on self-defense, the Court negated the question of accidental homicide."
 
 
 27
 The Ohio Court of Appeals concluded that Turner waived his right to challenge, on appeal, the trial court's jury instructions because he failed to comply with the requirements of Ohio's contemporaneous objection rule, Crim. R. 30. At the time of trial, Crim. R. 30 provided:
 
 
 28
 At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies of such requests shall be furnished to all other parties at the time of making such requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. The court need not reduce its instructions to writing.
 
 
 29
 A party may not assign as error the giving or the failure to give any instructions unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury. (Emphasis added.)
 
 
 30
 The Ohio appellate court concluded that petitioner did not comply with the requirements of Crim.R. 30 in two significant respects. First, petitioner failed to object to the court's charge of self-defense and the court's failure to instruct on an accident before the jury began its deliberations. Second, he failed to present to the court, in writing, a requested jury instruction on accident. The court stated that "by doing so he in effect waived [his] right to have such an instruction considered by the court."
 
 
 31
 The court reviewed petitioner's claim that it was plain error for the trial court to instruct the jury on self-defense but found no merit to this argument. The court concluded that, given the evidence, it would have been error for the court not to instruct the jury on self-defense.
 
 
 32
 As to petitioner's claim that the trial court should have instructed on accident, the court determined that such an instruction had, in effect, been given. The trial court instructed the jury on the meaning of "purpose." This instruction was, in effect, an accident instruction, the court proved that the petitioner acted with a criminal purpose or intent, the jury would have had to return a not guilty verdict.
 
 
 33
 Finally, the appellate court noted that the instructions included several lesser offenses. Had the jury believed petitioner' § claim of accident, "the charge of Negligent Assault certainly covered all of the facts as alleged by Defendant-Appellant in its most favorable light."
 
 B
 
 34
 Under Ohio law, failure to comply with Crim. R. 30, absent a clear miscarriage of justice, constitutes a waiver of any claim of error. State v Humphries, 51 Ohio St. 2d 95, 364 N.E.2d 1354 (1977). Such a waiver, without a showing of cause for the failure to comply and the actual prejudice which resulted from the alleged error, bars collateral habeas review. Wainwright v. Sykes, 433 U.S. 72, 87 (1977); United States v. Frady, 456 U.S. 152, 170 (1982) (habeas proceeding under 28 U.S.C. Sec. 2255).
 
 
 35
 Petitioner asserts that the Ohio appellate court erred when it ruled that he failed to comply with Crim. R. 30. After the court instructed the jury, it asked if the state had any objections or additions to the charge, and the prosecutor responded in the negative. The defense counsel then approached the bench and asked the court to give an instruction on intoxication, and requested that the court instruct the jurors that once they reach their own individual verdict, after a discussion of the merits with their fellow jurors, they should not change their minds in order to be congenial. The following colloquy then took place:
 
 
 36
 The Court: Anything else?
 
 
 37
 [Defense Counsel): I have some other objections that I might pose out of the hearing of the jury that I want to put into the record.
 
 
 38
 The Court: Well, I think they have already been charged. I'm not going to instruct them on intoxication. It might not help the defense of insanity.
 
 
 39
 [Defense Counsel): It has nothing to do with insanity. It goes to the purpose or the intent of the individual.
 
 
 40
 The Court: Well, I won't give the charge, either one of them. I think that they have all been presented. We will instruct them to try and maintain their position.
 
 
 41
 The trial court then sent the jury to deliberate. Only then did it allow Turner's counsel to present further objections.
 
 
 42
 The essence of petitioner's argument is that the trial judge, by sending the jury to deliberate prior to hearing his objections, prevented compliance with Crim. R. 30.[1]
 
 
 43
 The Ohio appellate court concluded that Turner waived his right to object to the jury instructions for failure to comply with Crim. R. 30. In Brewer v. Overberg, 624 F.2d 51, 53 (6th Cir. 1980), cert. denied, 449 U.S. 1085 (1981), "we held that even where the state court's ruling 'strains the language,' of its contemporaneous objection rule, 'we are bound by the state court's interpretation of its procedural rule. I 11 McBee V. Grant, 763 F.2d 811, 815 (6th Cir. 1983). In McBee, we stated that "[o]nly in rare cases will a federal habeas corpus court not defer to a state's application of its own contemporaneous objection rule." 763 F.2d at 816 (footnote omitted). In Walker v. Engle, 703 F.2d 959, 966 (6th Cir.), cert. denied, 464 U.S. 962 (1983), we stated
 
 
 44
 that when a state appellate court applies a procedural bar that has no foundation in the record or state law, the federal courts need not honor that bar. We do not by this holding sanction blanket federal court review of state procedural rulings, rather the rule is to insure that the state courts do not block federal vindication of federal constitutional rights by procedural rulings that have no basis in state law for the facts of the particular case. (Footnote omitted.)
 
 
 45
 Unless the state's conclusion of procedural waiver has no support in the record, we must honor the procedural bar through application of the Sykes "cause"-and-"prejudice" standard. since there is ample foundation in the record to support the state court's conclusion of procedural waiver, we apply the Sykes cause and prejudice test.
 
 
 46
 Ohio's contemporaneous objection rule, unlike the federal rule, requires a specific statement of the grounds for objection before the jury retires. State v. Lane, 49 Ohio St. 2d 77, 358 N. E .2d 1081 (1976), vacated on other grounds, 438 U.S. 911 (1978). Petitioner failed to specifically state, on the record, contemporaneously with the court's jury instructions, his objections thereto. That is a sufficient foundation, supported by Ohio law, to require this court to defer to the Ohio appellate court's determination that petitioner waived his objections to the jury instructions. See, e.g., Webster v. Engle, 721 F.2d -566, 567-568 (6th Cir. 1983). Since petitioner has failed to allege any cause for his failure to comply with Crim. R. 30, review of his allegations of error in the jury instructions is barred. Sykes, supra; Engle v. Isaac, 456 U.S. 107, 129, reh. denied, 457 U. S . 1141 (1982 ) .
 
 III.
 
 47
 Petitioner alleges that he was deprived of his right to effective counsel under the sixth amendment because of the trial court's instruction to the jury on self-defense. He asserts that since his theory of the case was accident, because of the instruction on self-defense, his counsel was unable to present an effective closing argument to the jury.
 
 
 48
 In Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984), the Supreme Court stated that a convicted defendant who alleges that his counsel was so deficient as to require reversal of the conviction must establish the following:
 
 
 49
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 
 
 50
 Since we have already concluded that Turner has failed to show the requisite cause for his failure to object to the court's self-defense instruction, and thus is foreclosed from entitlement to habeas relief on that ground, it follows that he has likewise failed to make out a Strickland claim of ineffective assistance of counsel for the asserted dilemma his lawyer faced at closing argument because of the self-defense instruction to which no timely objection was registered.[2]
 
 IV.
 
 51
 Turner asserts that his right to counsel under the sixth amendment was violated when he was identified by three witnesses at the police station, in the absence of counsel, as the one who cut Mott. Once adversary judicial proceedings commence, a defendant has a right to counsel. See Kirby v. Illinois, 406 U.S. 682, 688 (1972) (plurality opinion). In order to "assure that law enforcement authorities will respect the accused's constitutional right to the presence of his counsel at the critical lineup," identification testimony derived from an identification which occurred in the absence of counsel, after the initiation of adversary judiciary proceedings, is per se excluded from evidence. Gilbert v. California, 388 U.S. 263, 273 (1968).
 
 
 52
 Petitioner asserts that under Ohio law, adversary judicial proceedings had already commenced against him when the three eyewitnesses to the altercation identified him in the Lancaster, Ohio police lockup. Petitioner relies on State v. Lathan, 30 Ohio St. 2d 92, 282 N.E.2d 574 (1972), where the Ohio supreme Court held that the defendant had been identified, in the absence of counsel, in a situation so impermissibly suggestive as to create a grave opportunity for mistaken identification. The court reversed the defendant's conviction.
 
 
 53
 Lathan does not control our disposition here. The court, in that case, did not determine whether adversary judicial proceedings had commenced against the defendant at the time of the confrontation. Nor did it need to, since it found the procedure used to identify the defendant had been so suggestive as to warrant reversal.
 
 
 54
 Under the principles of Gilbert, supra, and United States v. i Wade, 388 U.S. 218 (1972), adversary judicial proceedings commence, and correspondingly, the right to counsel exists, after the prosecutorial process shifts from the investigatory stage and focuses on the accused. The facts of this case reveal that the prosecutorial process was still in the investigatory stage when Turner was identified as the one who cut Mott.
 
 
 55
 The Lancaster police had knowledge that the individuals involved in the altercation fled in a blue van. Turner was inside the van and was the only male occupant with light colored hair. The police, at the time of the identification confrontation, were unsure as to the role in the stabbing played by any of the three men arrested in the blue van. The police were still conducting an investigation into the circumstances surrounding the crime when Swisher, Alten, and England individually viewed the three males arrested in the blue van. The prosecution did not "focus" on Turner until after he was identified as the one who cut Mott. For this reason, we conclude that petitioner's claim, that he was denied counsel at the confrontation in violation of the sixth amendment, is without merit.
 
 V.
 
 56
 Turner asserts that his identification as the person who cut Mott was the result of impermissibly suggestive identification procedures. Our standard of review is whether, in light of the totality of the circumstances, the "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968). Because "reliability is the linchpin in determining the admissibility of the identification testimony," Manson v. Braithwaite, 432 U.S. 98 (1977), if we conclude the identification procedure was unnecessarily suggestive, we must then consider whether there was a very substantial likelihood of irreparable misidentification. See Stovall v. Denno, 388 U.S. 293, 301-02. The factors considered in determing the reliability of identification testimony, and therefore the probability of misidentification
 
 
 57
 include the opportunity of the witness to view criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.
 
 
 58
 Manson, supra, 432 U.S. at 114.
 
 
 59
 Application of the foregoing principles yields a conclusion that the identification procedure in this case passes constitutional muster. Initially, we conclude that the identification procedure was not impermissibly suggestive. Once Turner and the other two males arrested in the blue van had been placed in individual cells, the police began the identification procedure. Each witness separately viewed the three suspects. The witnesses were not told anything about the persons they were about to view. The police did not ask questions or make comments during the identification procedure. The suspects were held in three separate cells and the witnesses made their identifications through the cell windows.
 
 
 60
 While the foregoing procedure may have had some element of suggestiveness, we believe the reliability of the identifications by Swisher, Alten, and England outweigh any suggestiveness. The three witnesses, who positively identified petitioner as the one who cut Mott, all had a significant opportunity to view petitioner at the time of the crime. Terry England's testimony indicates that, despite some distraction, he was able to observe petitioner from the time he exited the Glass Bar and entered the affray until he left the scene in a blue van. England testified that just after Mott's throat was cut, Turner approached as close as three to five feet from him with a knife in hand. While England's attention was distracted at the moment of the cutting, he had sufficient opportunity to view petitioner to be able to make a positive identification.
 
 
 61
 Similarly, William Swisher had the opportunity to closely view the petitioner outside the Glass Bar. Swisher testified that Turner shoved him with both hands while Mott and Logan were still fighting. While Swisher testified that he went inside the Glass Bar for approximately two minutes during the affray, he also testified that he was present throughout the altercation between Turner and Mott.
 
 
 62
 Alten testified that he was present throughout the affray. He testified that he first observed petitioner as he confronted Terry England with a gun. Alten's attention alternated between petitioner's confrontation with England and the fight between Logan and Mott. He testified that while he was watching Mott and Logan fight, he observed petitioner run up and make "a thrusting motion toward Curt's neck." At that point, he ran into the Glass Bar to call for help.
 
 
 63
 The three positive eyewitnesses, swisher, Alten and England-, all exhibited a high degree of attention to the events, outside the bar, that led to Mott's death. While there were diversions, they served only to heighten the attention of the witnesses as the diversions threatened personal bodily injury to each of the witnesses. For example, Swisher testified that he was pushed by-petitioner and that when Mott let Logan up, Logan pulled off his belt, wrapped it around his right hand and, with a knife in the other hand, began screaming and motioning at the crowd to keep back. Alten testified that he was punched by Logan at a time when Logan had a belt wrapped around his fist, Alten also testified that during the fight between Mott and Logan, he saw Turner threaten England with a gun, and thereafter-the gun fell to the ground. England indicated that at one point he noticed a gun on the ground near his feet, and that he attempted to step on the gun, but that he was motioned away from the gun by a knife-wielding Logan. England further testified that after Mott was cut by Turner, Turner picked up the gun.
 
 
 64
 Swisher and Alten identified petitioner before the police took their statements. They did not give a description of any of Mott's assailants before the identification. England gave an oral statement to the police prior to his identification of petitioner, but it is not clear from the record whether he gave a description of petitioner at that time.
 
 
 65
 Alten, Swisher and England all were certain that Turner was the man who slashed Mott's throat. The challenged identifications occurred within three to four hours of the crime, while the memory of the altercation was still fresh in the minds of the witnesses. The Manson factors, applied to this case, indicate a very low probability of mistaken identification. Therefore, Turner has not presented a viable claim for relief on this ground.
 
 
 66
 For all the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 *
 The Honorable William O. Bertelsman, District Judge for the United States District Court for the Middle District of Kentucky, sitting by designation
 
 
 [1]
 Petitioner further asserts that he complied with the requirements of Crim. R. 30 during an earlier in-chambers discussion between the judge, petitioner's counsel, and the prosecutor the morning the jury was instructed. The in-chambers discussions were unrecorded and are not a part of the record. We cannot credit petitioner's allegations that his counsel complied with the requirements of Crim. R. 30, but did so off the record
 
 
 [2]
 We would be presented with a different problem if the Strickland claim related to his counsel's failure to object to the self-defense instruction, but it does not