831 F.2d 296
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Patrick D. MURPHY, Petitioner-Appellant,
v.
Robert LECUREUX and Frank J. Kelley, Respondents-Appellees.
 No. 86-1514.
 United States Court of Appeals, Sixth Circuit.
 Oct. 13, 1987.
 
 Before CORNELIA G. KENNEDY and KRUPANSKY, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner Patrick Murphy ("petitioner") appeals the judgment of the District Court denying his petition for writ of habeas corpus. The petitioner, who was convicted by a jury of second degree murder, filed the petition pursuant to 24 U.S.C. Sec. 2254. On appeal the petitioner raises four issues: 1) whether the District Court should have granted his motion for an evidentiary hearing; 2) whether the evidence was sufficient to support the jury's verdict of second degree murder; 3) whether the prosecutor engaged in misconduct that denied the petitioner a fair trial; 4) whether the petitioner was denied effective assistance of counsel.
 
 
 2
 The Michigan Court of Appeals made the following findings of fact, some of which the petitioner disputes. Petitioner's conviction arose out of the beating death of Osby Fails, a middle-aged black man, on August 11, 1980. The petitioner had attended a party at the home of Alvin Carabell, Sr., a co-defendant, during the early morning hours of that day. Thomas Root and Wayne Keefer, two other co-defendants, also attended the party. At approximately 6:00 a.m., Fails came to the house and said he wanted to dance and to drink some beer. Carabell grabbed him and threw him out. The petitioner joined Carabell, Keefer and Root in beating Fails. The petitioner was seen kicking Fails in the head and chest. Fails' body was found a short distance from Carabell's house later that day. Injuries Fails received to his brain caused his death. Joint Appendix at 34-35.
 
 
 3
 Petitioner was arrested, arraigned and tried on the charge of open murder. The petitioner was tried jointly with his co-defendants, Root, Keefer, and Alvin Carabell, Sr. The jury convicted the petitioner of second degree murder, and the court sentenced him to a term of twenty to forty years. The court denied the petitioner's post-trial motion for a new trial. The Michigan Court of Appeals affirmed the petitioner's conviction on May 12, 1983, and on January 30, 1984 the Michigan Supreme Court denied leave to appeal. The Michigan Court of Appeals and the Michigan Supreme Court both subsequently denied the petitioner's delayed application for leave to appeal.
 
 
 4
 Petitioner subsequently filed a petition for writ of habeas corpus and a motion for an evidentiary hearing in the U.S. District Court for the Eastern District of Michigan. The District Court denied his petition on May 29, 1986. Petitioner appealed.
 
 I.
 
 5
 The petitioner's first issue is whether the District Court erred in refusing to grant his motion for an evidentiary hearing. The District Court accepted the Michigan Court of Appeals' findings of fact. Under 28 U.S.C. Sec. 2254(d)(8) a federal court in a habeas corpus proceeding may not presume a state court's findings to be correct if the factual findings are "not fairly supported by the record."
 
 
 6
 The petitioner argues that the following finding of the Michigan Court of Appeals is not fairly supported by the record: "Carabell was joined by the [petitioner], Keefer and Root who joined in beating Fails. [Petitioner] was seen kicking Fails in the head and the chest." Joint Appendix at 35. According to the petitioner, the evidence did not show that he joined co-defendants Carabell, Keefer and Root in beating Fails and did not show that he was seen kicking Fails in the head and chest. He relies on the testimony of Larry Sprague and Terry Berry. According to the petitioner, Larry Sprague stated that he saw the petitioner kick Fails once, somewhere in the upper body. Terry Berry stated that the petitioner came up to him while the others were beating Fails and asked him what was happening, and then kicked Fails once. At most, the petitioner argues, this evidence only supports a finding that he came up to Fails and kicked him after the others had beaten him.
 
 
 7
 Other testimony, however, supports the findings of the Michigan Court of Appeals. Terry Carabell testified that she saw the petitioner standing around Fails with a lot of other people, and that he kicked Fails two or three times. Record # 37 at 859-60. Alvin Carabell, Jr. testified that he saw a man in a black vest kick Fails on two different occasions. Record # 37 at 801. Although he claims that the man he saw was not the petitioner, he also stated that he saw the man later get into an argument with Daniel Jerrolds. Record # 36 at 735. Tom Simmons identified the petitioner as the man in a black vest who had argued with Jerrolds. Record # 38 at 1097-98. Larry Sprague testified that the petitioner's kick landed on Fails "by his head or his face." Record # 36 at 606. Given this testimony we hold that the finding of the Michigan Court of Appeals that the petitioner joined the other defendants in beating Fails in the head and the chest is fairly supported by the record.
 
 II.
 
 8
 The petitioner's next issue is whether the evidence was sufficient to support the jury's verdict that he was guilty of second degree murder. In reviewing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Furthermore, "the jury's resolution of questions of credibility and demeanor ... is entitled to 'special deference.' " Brown v. Davis, 752 F.2d 1142, 1147 (6th Cir.1985).
 
 
 9
 Michigan's second degree murder statute, M.C.L. Sec. 750.317, does not describe the elements of the crime. However, the Michigan Supreme Court has stated that a defendant may be convicted of second degree murder if his actions evidence a wanton and willful disregard of the likelihood that the natural tendency of his behavior is to cause death or great bodily harm. People v. Aaron, 409 Mich. 672, 728, 299 N.W.2d 304, 326 (1980). A person who aids and abets second degree murder may be prosecuted for second degree murder, M.C.L. Sec. 767.39, and the court so instructed the jury in this case. To be convicted of aiding and abetting, "the accused must take some conscious action designed to make the criminal venture succeed." Fuller v. Anderson, 662 F.2d 420, 424 (6th Cir.1981), cert. denied, 455 U.S. 1028 (1982).
 
 
 10
 The petitioner, reframing his first argument, contends that no evidence exists which shows that he was actually involved with the other co-defendants in hitting or kicking Fails, and that consequently the jury should not have convicted him of aiding and abetting second degree murder. He contends that the most the evidence showed was that he kicked Fails once after the others had ceased kicking him, without knowledge of what had occurred previously.[1]
 
 
 11
 The District Court held that the evidence was sufficient to support the petitioner's conviction. Joint Appendix at 98. We agree with this conclusion. As the District Court noted, the examining physician testified that Fails died due to brain damage caused by a severe beating, and that Fails had suffered many blows rendered with great force. Terry Carabell testified that she saw the petitioner, with a lot of people around him, kick Fails two or three times. Record # 37 at 859-60. Larry Sprague testified that he saw the petitioner kick Fails in the head or face. Record # 36 at 606. Terry Berry testified that after a group of people had finished beating Fails, the petitioner kicked Fails so hard that it knocked Fails onto his back. Record # 38 at 1069.
 
 
 12
 Furthermore, Larry Sprague testified that the petitioner had been wearing a black vest, Record # 36 at 596, and the petitioner's defense counsel admitted during final argument that the petitioner had been wearing a black vest. Record # 41 at 1681-82. This is significant because other witnesses described an assailant wearing a black or dark vest. Ricky Owens testified that he saw someone wearing a black leather vest kicking Fails along with Carabell, Root and Keefer. Record # 36 at 698. As noted above, Alvin Carabell, Jr. testified that he saw a man wearing a black vest kicking Fails after the others had ceased, although he also specifically stated that the person he saw was not the petitioner and that the petitioner had not been wearing a black leather vest that night. However, given the evidence that the petitioner had been wearing a black leather vest, the jury was entitled to disbelieve Alvin Carabell on that point. We find the evidence taken as a whole to be sufficient for a rational juror to find that the petitioner acted with the other co-defendants in wanton and willful disregard of the likelihood that the natural tendency of his behavior was to cause death or great bodily harm.
 
 III.
 
 13
 The petitioner's next claim is that the prosecutor engaged in misconduct that denied the petitioner his sixth amendment right to a fair trial. In particular, the petitioner argues that the prosecutor "took advantage of confusing, contradicting and conflicting testimony and used it against the Petitioner." Petitioner's brief at 28.
 
 
 14
 The petitioner failed to object to the prosecutor's conduct at trial. Michigan requires such an objection to preserve the issue for appeal. McBee v. Grant, 763 F.2d 811, 813-16 (6th Cir.1985). When a habeas corpus petitioner has failed to comply with a state procedural rule, and that rule is an adequate and independent state ground upon which the state court relied to foreclose review of a federal constitutional claim, the petitioner must show both cause for the failure to object and prejudice from the asserted error. Engle v. Isaac, 456 U.S. 107, 129 (1982); Maupin v. Smith, 785 F.2d 135, 138 (6th Cir.1986).
 
 
 15
 In the case before this Court the Michigan Court of Appeals relied on the petitioner's failure to object at trial in denying his leave to appeal. See Joint Appendix at 100. The petitioner has not shown cause for his failure to object. Consequently, he is barred from claiming that misconduct by the prosecutor denied him his right to a fair trial.[2]
 
 IV.
 
 16
 The petitioner's final issue is whether he was denied his sixth amendment right to effective assistance of counsel. His counsel stated the following in final argument:
 
 
 17
 Two things I think are beyond dispute from my point of view: That is Patrick Murphy had on a black leather vest. It may have been leather. Some people disagree as to the texture of the fabric, but at any rate, it was dark.
 
 
 18
 Secondly, that Patrick Murphy delivered one kick. I want you to understand one thing, ladies and gentlemen, at the very outset. In doing that Patrick Murphy was wrong, morally wrong. I do not for one moment condone it. I don't ask you to condone it.
 
 
 19
 Record # 41 at 1681-82. The petitioner argues that the identification of the person wearing the black leather vest was a key issue in the trial, and that by conceding it his counsel " 'entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing,' " amounting to ineffective assistance of counsel. Martin v. Rose, 744 F.2d 1245, 1250 (6th Cir.1984).
 
 
 20
 The respondent contends that the petitioner's counsel was employing a trial tactic by arguing that while the petitioner may have been guilty of some sort of assault, he was not guilty of murder. The District Court agreed, finding that the concession was designed to gain the jury's trust in the hope that they would convict the petitioner of something less than the maximum. Joint Appendix at 101. The tactic worked to an extent, the District Court noted, since although the jury convicted Alvin Carabell, Sr. of first degree murder, the other co-defendants were convicted of only second degree murder.
 
 
 21
 Strickland v. Washington, 466 U.S. 668 (1984) outlines the standard for reviewing a claim of ineffective assistance of counsel. First, the defendant must show that the counsel's performance was deficient. Id. at 687. Second, the defendant must show that there is a reasonable probability that but for the counsel's unprofessional error, the result would have been different. Id. at 694. However, the Court cautioned with respect to the first prong:
 
 
 22
 [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.... Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."
 
 
 23
 Id. at 689 (emphasis added). In light of this language, we find that the petitioner has not shown that his counsel's statements resulted in assistance below an objective standard of reasonableness. Several witnesses testified that the petitioner had been wearing a black or dark vest. See, e.g., Record # 36 at 596; Record # 37 at 818, 862. Only one witness, Alvin Carabell, Jr., testified that the petitioner had not been wearing a black vest. It would have been a reasonable trial strategy to attempt to gain the trust of the jury by conceding the issue of identification, an issue that he had little chance of winning, in the hope that the jury would not convict the petitioner of first degree murder. The petitioner argues that he was not the only person at the party wearing a black leather vest. However, his counsel did not say that he was the only one wearing a black leather vest, but merely admitted that he had been wearing one.
 
 
 24
 Furthermore, the petitioner has not met the second prong of Strickland, which requires him to show that but for his counsel's statements, the result of the proceeding would have been different. Since overwhelming evidence existed that the petitioner had been wearing a dark vest at the time of the incident, it is unlikely that the concession affected the jury's verdict.
 
 
 25
 Accordingly, we AFFIRM the judgment of the District Court.
 
 
 
 [1]
 Given the testimony of other witnesses as to Fail's condition after he had been beaten, it seems highly unlikely that anyone seeing him a short time afterwards would not have realized that someone had hurt him badly
 
 
 [2]
 The petitioner, relying on United States v. Young, 470 U.S. 1 (1985), argues that a federal court may grant a writ of habeas corpus even in the absence of an objection at trial when the prosecutor's conduct amounts to plain error under Fed.R.Crim.P. 52(b). Young, however, involved a trial in a federal district court rather than a state court trial, and consequently does not change the cause and prejudice rule applied to petitions arising out of a state court conviction