**Robert C. COOK, Petitioner-Appellant,**

v.

**Dale FOLTZ, Respondent-Appellee.**

**No. 85-1750.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 14, 1986.

Decided March 31, 1987.

Arthur J. Tarnow (argued), Detroit, Mich., for petitioner-appellant.

Thomas A. Kulick, Asst. Atty. Gen. (argued), Lansing, Mich., for respondent-appellee.

Before LIVELY, Chief Judge and KEITH and MERRITT, Circuit Judges.

KEITH, Circuit Judge.

Petitioner Robert Cook, a Michigan prisoner convicted of first-degree murder, appeals from the final judgment of the United States District Court for the Eastern District of Michigan denying his petition for a writ of habeas corpus. Petitioner contends, inter alia, that the trial judge's instruction to the jury on the issue of malice unconstitutionally shifted the burden of proof to the accused. *See Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). He also contends that the trial court judge inadequately instructed the jury on the issue of causation. He claims that the judge neglected to inform the jury that if it found "grossly erroneous medical treatment" as an intervening cause in the death of the murder victim, he could not be convicted of first-degree murder. Though he raises four other issues for habeas corpus review,[1] we find the two noted above dispositive and affirm the judgment of the district court for the reasons stated below.

## I.

### BACKGROUND

Petitioner was convicted in February, 1971 of the murder of Lloyd Tanner, the leader of a motorcycle gang. At about 2:00 a.m. on December 29, 1969, Cook climbed up on the roof of a building and shot Tanner with a high-powered rifle as he was leaving an adjacent restaurant. Tanner died some three months later. Trial testimony revealed that two days before the shooting Cook borrowed the rifle and a box of ammunition from a friend. He told the friend he wanted to retaliate against a motorcycle gang member who had ripped a gold swastika earring out of his ear. On the morning of the 29th, he had located the gang member in the restaurant. Though Tanner·was not the person he had been seeking, Cook testified that he recognized Tanner and intentionally shot him as he left the restaurant. After attempting to get rid of the rifle, he was arrested and made a confession to local police. At trial, he claimed insanity as a defense. He also contended that Tanner's death three months after the shooting was the result of an infection or illness unrelated to the bullet wound. The prosecution argued that death occurred as a result of "a bullet wound to the chest which necessitated removal of the lung and caused a subsequent infection leading to death."

Petitioner was convicted of first-degree murder by a jury and sentenced to life imprisonment. The Michigan Court of Appeals affirmed in 1972 and denied leave to appeal in 1980. Later that year, however, the Michigan Supreme Court remanded the case to the Court of Appeals for appellate review. The Michigan Court of Appeals affirmed the conviction a second time in 1981. Both the Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal and petitioner now seeks a writ of habeas corpus in federal court.

## II.

### DISCUSSION

#### A. *The Sandstrom Error*

Cook's first ground for habeas corpus relief concerns a jury instruction given by the judge on the issue of malice:

The law implies from an unprovoked, unjustifiable or unexcusable killing, the existence of that wicked disposition which the law terms malice aforethought. If a man kills another suddenly and without provocation, the law implies malice and the offense is murder.

Petitioner's counsel did not object to the instruction at trial. He argues now, however, that the instruction violated the four-

---

1. Petitioner contends he was denied effective assistance of counsel, that the conduct of the prosecutor denied him a fair trial, that the use in trial of information obtained in preparation for a competency hearing denied him due process, and that the trial court's instruction on Mr. Cook's credibility was unconstitutional in that it required a preliminary determination of his credibility.

teenth amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt. *See Sandstrom; Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *Ulster County Court v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); *Merlo v. Bolden,* 801 F.2d 252 (6th Cir. 1986); *McBee v. Grant,* 763 F.2d 811 (6th Cir.1985). The district court found that since Cook failed to object to the instruction at trial, the state appellate court had affirmed his conviction on the independent and adequate state procedural ground of lack of contemporaneous objection. Accordingly, the district court applied the "cause and prejudice" test as required by *Wainwright v. Sykes,* 433 U.S. 72, 92 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and held that since Cook had failed to show sufficient cause for and prejudice from his failure to object, the *Sandstrom* claim was barred from consideration.

We believe the district court's finding and analysis are correct. There is little question that the instruction given by the state court trial was *Sandstrom* error. The state carries the burden of proving every element of a criminal offense beyond a reasonable doubt and any jury instruction that shifts the burden is a violation of due process. *Sandstrom,* 442 U.S. at 523, 99 S.Ct. at 2459; *In re Winship,* 397 U.S. at 364, 90 S.Ct. at 1072–1073. In order to assess whether an instruction constitutes *Sandstrom* error, one must determine "whether the challenged jury instruction had the effect of relieving the State of the burden of proof enunciated in *Winship* on the critical question of ... state of mind ... by creating a mandatory presumption of intent upon proof by the State of other elements of the offense." *Francis,* 471 U.S. at 313, 105 S.Ct. at 1971 (1985). In the present case, the judge's instruction created a mandatory presumption that if the State could prove the shooting of Tanner to be "unprovoked, unjustifiable or unexcusable", then Cook's state of mind was "malice aforethought". As such, it clearly shifted the burden of proof away from the State. The fact that the *Sandstrom* error occurred before the *Sandstrom* decision is of no consequence. *Sandstrom* has full retroactive effect in this circuit "since the instructional error would normally affect a defendant's right to a fair trial and impact upon the ultimate issue of innocence or guilt." *Conway v. Anderson,* 698 F.2d 282, 284 (6th Cir.), *cert. denied,* 462 U.S. 1121, 103 S.Ct. 3092, 77 L.Ed.2d 1352 (1983). *See also McBee; Williams v. Engle,* 683 F.2d 152 (6th Cir.1982); *Krzeminski v. Perini,* 614 F.2d 121 (6th Cir.), *cert. denied,* 449 U.S. 866, 101 S.Ct. 199, 66 L.Ed.2d 84 (1980).

We cannot consider the *Sandstrom* error conclusive, however, unless Cook shows that this issue was exhausted in the state courts and adequately preserved for appeal under the procedural rules of Michigan. *See Leroy v. Marshall,* 757 F.2d 94, 97 (6th Cir.), *cert. denied sub nom, Leroy v. Morris,* — U.S. —, 106 S.Ct. 99, 88 L.Ed.2d 80 (1985); *Ewing v. McMackin,* 799 F.2d 1143, 1148 (6th Cir.1986). Neither party contests the proposition that petitioner exhausted his habeas claims in the state courts. Rather, what is at issue is whether Cook's failure to object to the jury instruction functions as a procedural default which bars him from raising the *Sandstrom* issue.[2]

> The rule is, of course, that the failure to abide by a state's contemporaneous objection rule will bar habeas review of the issue absent a showing of cause for the failure to object and actual prejudice flowing from the asserted error. See *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497 [53 L.Ed.2d 594] (1977); *Fornash v. Marshall,* 686 F.2d 1179 (6th Cir.1982), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1439, 75 L.Ed.2d 796 (1983) ...
>
> The cause and prejudice standard is not applied, however, when the state court overlooks the procedural default and in-

---

**2.** *See Meeks v. Bergen,* 749 F.2d 322, 324 (6th Cir.1984); "[T]he question of whether a respondent is barred from litigating in a federal habe-

as corpus proceeding constitutional claims that were forfeited before the state court is distinct from the issue of exhausted state remedies."

stead disposes of the issue on the merits ...

*McBee,* 763 F.2d at 813 (citations omitted).

Michigan law "generally require[s] an objection to preserve a *Sandstrom* error." *McBee* 763 F.2d at 816; *See also People v. Woods,* 416 Mich. 581, 331 N.W.2d 707 (1982), *cert. denied,* 462 U.S. 1134, 103 S.Ct. 3116, 77 L.Ed.2d 1370 (1983); *People v. Handley,* 415 Mich. 356, 329 N.W.2d 710 (1982). Our next inquiry, then, is whether the Michigan appellate courts decided the jury instruction issue on the merits (as a *Sandstrom* issue) or on the basis of procedural default. Our inquiry is complicated somewhat by the fact that the last determinative state court action was a Michigan Supreme Court order affirming a Michigan Court of Appeals unpublished order denying an application for delayed appeal on the *Sandstrom* issue. The text of the state appellate court opinion "appears to be a standard form denial of leave to file a delayed appeal," *Raper v. Mintzes,* 706 F.2d 161, 164 (6th Cir.1983), and reads as follows:

> In this cause [sic] an application for delayed appeal is filed by defendant-appellant, and an answer in opposition thereto having been filed, and due consideration thereof having been had by the Court, IT IS ORDERED that the application be, and the same is hereby DENIED for lack of merit in the grounds presented.

The district court surmounted this difficulty by correctly applying the principles of *Raper v. Mintzes.* Under *Raper,* a federal habeas court is required "to look to the argument presented to the state court" when the basis for the state court's decision is unclear. 706 F.2d at 164 (citing *Martinez v. Harris,* 675 F.2d 51 (2d Cir.), *cert. denied,* 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982)). If the state prosecutor only argued the merits of the petitioner's claim and did not raise the procedural default issue, the federal court may conclude that the state court relied on the merits, thus avoiding the application of the cause and prejudice test. If the prosecutor only argued the issue of the petitioner's procedural default, then the default is assumed

to be the basis of the state court's decision and the cause and prejudice test applies. If the prosecutor argued either the merits or the procedural default in the alternative, the federal habeas court should conclude that the state court did not use the merits of the petitioner's claims as a basis for its decision, thus making the cause and prejudice test applicable. *Id.* In the instant case, the district court correctly noted that the state prosecutor argued in the alternative. Petitioner must therefore satisfy the cause and prejudice test if he wishes to pursue his *Sandstrom* claim.

■ Upon careful review, nothing in the record or in the briefs purports to advance a cause for Cook's failure to object. Moreover, his failure to show cause is not vitiated by the unavailability of the *Sandstrom* doctrine at the time of trial. Counsel for petitioner had at that time "the tools to construct" a constitutional claim since the issue arose after *In re Winship. See also Engle v. Isaac,* 456 U.S. 107, 131, 102 S.Ct. 1558, 1573, 71 L.Ed.2d 783 (1982); *McBee v. Grant.* Since we agree with the district court that petitioner has failed to show cause, we need not discuss whether prejudice resulted from the *Sandstrom* error. Accordingly, we hold that petitioner's *Sandstrom* claim is barred because of his failure to show cause for and prejudice from his counsel's failure to object to the instruction at trial.

■ An additional *Sandstrom* issue requires our attention. The burden-shifting instruction at issue here was on intent. Federal habeas courts should be particularly attentive to a *Sandstrom* claim when the challenged instruction shifts the burden of proof on this most important element of a criminal charge. The court's concern should be qualified, however, by an appreciation of the context in which the alleged error was made. That appreciation is best served by the use of harmless error analysis. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Connecticut v. Johnson,* 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983); *Merlo v. Bolden; Conway v. Anderson,* 698 F.2d at 285; *Williams v. Engle; Krzeminski v.*

*Perini.* This circuit has noted that the harmless error rule in the context of a *Sandstrom* claim "is not a question of mechanical application of sterile legal principles, but a sensitive judicial determination made upon a review of the record ... [t]he decision must be honestly made with ... [an] appreciation of all of the circumstances which go to bear upon the ultimate verdict which was reached by the jury." *Williams,* 683 F.2d at 153. Our review of the record indicates that at trial petitioner took the stand and admitted he shot the gun after recognizing Tanner. The record also shows that defense counsel raised an insanity defense. The insanity defense was raised not to mitigate the intent to aim and shoot Tanner—that much appears conceded by the defense—but rather to show Cook's generalized inability to know right from wrong and appreciate the wrongness of his act. A *Sandstrom* error may be harmless if the defendant had conceded the issue of intent. *See e.g. Krzeminski,* 614 F.2d at 125. "In presenting a defense such as alibi, insanity or self defense, a defendant may in some cases admit that the act alleged by the prosecution was intentional, thereby sufficiently reducing the likelihood that the jury applied the erroneous instruction so as to permit the appellate court to consider the error harmless." *Connecticut,* 460 U.S. at 87, 103 S.Ct. at 977. We are of the view that the circumstances of this case fall under the *Connecticut* decision. Accordingly, after a careful review of the lower court record, we hold the jury instruction to be harmless error.

### B. *Causation Issue*

▮ Petitioner further contends that the trial court inadequately instructed the jury on the issue of causation. He argues that the court, by failing to instruct that if there were intervening grossly erroneous medical treatment he would not be responsible for Tanner's death, denied him due process of law. We disagree. Counsel for Cook clearly presented the issue of intervening cause through the defense that Tanner died as a result of a stomach infection, a condition unrelated to the shooting. Petitioner even presented a witness, a forensic pathologist, to provide testimony in support of his defense. The jury was instructed "to determine whether Lloyd Tanner's death resulted from a bullet wound inflicted on him by Robert Cook" and Cook's counsel was on record as being satisfied with the instructions relative to his theory of the case. Moreover, nothing in the trial record provides a basis for a claim of grossly erroneous medical treatment. Hence, the jury was properly instructed on causation and the lack of the desired instruction did not deny petitioner due process. We also note that Michigan's contemporaneous objection rule applies to this claim of error. Because petitioner failed to show cause and prejudice for his failure to object to the instruction at the time of trial, we cannot countenance his claim for habeas relief on this ground.

### C. *Other Grounds for Appeal*

Cook also advances claims of ineffective assistance of counsel, prosecutorial misconduct, error in the use in trial of information obtained in preparation for a competency hearing and a third jury instruction error. We find these claims to be without merit.

### III.

### CONCLUSION

Accordingly, we AFFIRM the district court order of the Honorable Richard F. Suhrheinrich denying petitioner habeas corpus relief.

MERRITT, Circuit Judge, concurring.

Although the majority correctly holds that the "cause and prejudice" test enunciated in *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977), controls the disposition of petitioner's *Sandstrom* claim, the *Sykes* analysis presented in the majority opinion is flawed by its misapprehension of the substantive basis of petitioner's argument. The majority states at page seven that "nothing in the record or in the briefs purports to advance a cause for Cook's failure to object." Contrary to this assertion, I believe that petitioner has fairly raised ineffective assist-

ance of counsel as cause. *See* Appellant's Brief at 22. A claim of cause based on ineffective assistance of counsel presents a special case which was recently considered by the Supreme Court in *Murray v. Carrier*, — U.S. ——, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Although the result is the same in this case, I write separately in order to analyze Mr. Cook's arguments under the principles announced in the *Carrier* decision.

*Wainwright v. Sykes* established that a habeas petitioner must show "cause and prejudice" in order to obtain federal review of a claim that has been procedurally defaulted in state court. 433 U.S. at 87, 97 S.Ct. at 2506–07. The *Sykes* opinion, however, left the precise definition of these terms for the future. *Id.* Recently, the Supreme Court has fulfilled its promise by deciding a number of cases that define the cause prong of the *Sykes* test. *See Reed v. Ross*, 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984) (unavailability of factual or legal basis of claim may constitute cause); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (failure to recognize every possible claim not sufficient cause); *Murray v. Carrier*, — U.S. ——, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (ineffective assistance may constitute cause).

The most recent of these cases directly addresses the issue presented in this appeal: under what circumstances does ineffective assistance of counsel constitute cause? In *Carrier*, the Supreme Court held that the cause element of the *Sykes* test is satisfied when counsel's performance is deficient under the standard announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Carrier*, 106 S.Ct. at 2645–46. This test considers the entirety of the representation and does not focus on the failure to make a specific objection. Under *Carrier*, the defendant bears the risk that his attorney will fail to recognize the factu-

al or legal basis for a claim, or will fail to raise the claim despite recognizing it. 106 S.Ct. at 2645–46. "[T]he Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Id.* at 2645 (quoting *Engle v. Isaac*, 456 U.S. at 134, 102 S.Ct. at 1575).

Mr. Cook's claim of ineffective assistance is offered both as cause for his procedural default in state court and as a substantive ground for habeas relief. The majority properly found petitioner's substantive claim of ineffective assistance to be meritless under the *Strickland* standard. In my view, however, the majority should have noted that petitioner's failure to prove constitutionally deficient counsel also negated a finding of cause, thereby foreclosing federal review of the procedurally-defaulted *Sandstrom* error.[1]

Under *Sykes*, it is unnecessary to reach a habeas petitioner's claim on prejudice once it is established that cause has not been shown. Even *actual* prejudice is insufficient without a showing of cause since the *Sykes* test is clearly conjunctive. *Carrier*, 106 S.Ct. at 2648–50. The only exception is the extraordinary case where the court is convinced that an innocent person has been convicted. *Id.* at 2650. Since this is not the case with Mr. Cook's petition, I see no need to address his argument on prejudice as the majority has done.

---

1. To whatever extent petitioner depends on the "novelty" of the *Sandstrom* claim to show cause, I agree with the majority that his argument is precluded by *Reed v. Ross*, 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), and *McBee v. Grant*, 763 F.2d 811 (6th Cir.1985). Novelty cannot be established as cause for procedurally defaulting a *Sandstrom* claim where the objectionable instruction occurred after *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). *See Reed*, 468 U.S. at 19–20, 104 S.Ct. at 2912–13; *McBee*, 763 F.2d at 817.